UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

**FILED**

99 OCT 27 PM 12: 41

U.S. DISTRICT COURT
N.D. OF ALABAMA

CHRIS WISENER,                    )
                                  )
        Plaintiff,                )
                                  )
vs.                               )  Civil Action No. CV-98-S-1083-NE
                                  )
BUFFALO ROCK COMPANY,             )          **ENTERED**
                                  )
        Defendant.                )          OCT 2 7 1999

## MEMORANDUM OPINION

This action is before the court on cross motions for summary

judgment as to plaintiff's claim under the Family and Medical Leave

Act of 1993 ("FMLA"), 29 U.S.C. § 2601 et seq., and defendant's

motion for summary judgment as to plaintiff's claim under the

Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101

et seq. Upon consideration of the motions, briefs, evidentiary

submissions, and pleadings, the court finds that the cross motions

as to plaintiff's FMLA claim are due to be denied. The court

further finds that defendant's motion as to plaintiff's ADA claim

is due to be granted in part and denied in part.

## I. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) provides, in relevant

part, that summary judgment not only is proper, but "shall be

rendered forthwith if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The movant bears the initial burden of showing the court, by reference to materials on file, that no genuine issues of material fact exist to be decided at trial. *See Celotex Corporation v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Clark v. Coats & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). The movant discharges this burden by showing the court there is an absence of evidence to support the non-movant's case. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) *(per curiam)*. Rule 56 permits the movant to discharge this burden with or without supporting affidavits. *See Celotex*, 477 U.S. at 324, 106 S.Ct. at 2553. When the moving party has discharged its burden, the non-movant must go beyond the pleadings and designate specific facts showing there is a genuine issue for trial. *See Jeffery*, 64 F.3d at 593.

In deciding whether the movant has met its burden, the court is obligated to draw all inferences from the evidence presented in the light most favorable to the non-movant and, also, to resolve all reasonable doubts in that party's favor. *See Spence v. Zimmerman*, 873 F.2d 256 (11th Cir. 1989). Inferences in favor of

2

the non-movant are not unqualified, however.    "Mere general
allegations which do not reveal detailed and precise facts will not
prevent the award of summary judgment."    *Resolution Trust
Corporation v. Dunmar Corporation*, 43 F.3d 587, 592 (11th Cir.
1995) (citation omitted).    Moreover, evidence that is merely
colorable, *see Brown v. City of Clewiston*, 848 F.2d 1534, 1537
(11th Cir. 1988), conclusory, *see Peppers v. Coates*, 887 F.2d 1493,
1498 (11th Cir. 1989), or conjectural, does not create a genuine
issue of material fact.

Thus, if a reasonable fact finder evaluating the evidence
could draw more than one inference from the facts, and if that
inference introduces a genuine issue of material fact, then the
court should not grant summary judgment. *See Augusta Iron & Steel
Works v. Employers Insurance of Wausau*, 835 F.2d 855, 856 (11th
Cir. 1988). A "genuine" dispute about a material fact exists if
the "evidence is such that a reasonable jury could return a verdict
for the nonmoving party." *Jeffery*, 64 F.3d at 594 (quoting
*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505,
2510, 91 L.Ed.2d 202 (1986)). The bottom line is "whether the
evidence presents a sufficient disagreement to require submission
to a jury or whether it is so one-sided that one party must prevail

3

as a matter of law." *Anderson*, 477 U.S. at 251-52, 106 S.Ct. at
2512.

## II. FACTUAL BACKGROUND

Plaintiff was employed by defendant for eight years, from
March of 1989 until July of 1997. (*See* Wisener depo. at 9.)   The
last position held by plaintiff was that of "business development
coordinator."[1]   (*See id.* at 12.)   The termination of plaintiff's
employment followed an injury to his back that occurred on December
18, 1996.   (*See id.* at 39.)   The injury occurred while plaintiff
was "unloading pallets of soft drinks from the rear of a transport
trailer on to a hydraulic lift gate on the rear of the truck."
(*See id.*)   Plaintiff underwent back surgery[2] in April of 1997, and
did not work for approximately twelve weeks.   (*See id.* at 56-60.)

Near the end of plaintiff's convalescence, defendant required
him to obtain a statement from his physician certifying that he was
fit to return to work.[3]   Plaintiff submitted a letter from his

---

[1] Plaintiff received a series of promotions on his way to becoming a
business development coordinator.   During the time he worked for defendant,
plaintiff held the following positions: relief salesman on a soft drink route,
route salesman for home/market sales, supervisor of market sales, business
development coordinator.   (*See* Wisener depo. at 10-11.)

[2] Plaintiff's surgery entailed a double level fusion with a decompression
of one of the discs.   (*See id.* at 54.)

[3] Defendant's Family and Medical Leave policy states, in relevant part:

A doctor's certificate will be required if leave is taken for a
medical condition to establish the condition and the reason the
employee is needed to provide care or whether or not the employee is

4

treating physician, Dr. Gilbert M. Aust, on July 1, 1997.[4]  *(See*

Aust depo. at Plaintiff's Exhibit "1.")  Dr. Aust authorized

plaintiff to resume working on July 7, 1997, but he also noted

certain "permanent restrictions," including "[n]o lifting over 25

lbs." and "[n]o repetitive lifting, bending, stooping, pushing,

pulling, or climbing."  *(Id.)*  Plaintiff submitted a 'second

statement by Dr. Aust on July 2, 1997.  *(See id.* at Plaintiff's

Exhibit "2.")   This certificate again authorized plaintiff to

resume working on July 7th, and elaborated on his restrictions:

> Mr. Wisener is released on 7/7/97 to his previous job,
> except he is unable to lift heavy pallets of cokes.  His
> restrictions are no lifting over 25 lbs, no repetitive
> lifting, bending[,] stooping, pushing, pulling or
> climbing.  These are permanent restrictions.

*(Id.)*

Defendant did not permit plaintiff to return to work on July

7th.  *(See* Wisener depo. at 76-80.)  Richard Juda, the department

---

able to perform his or her job duties.  A second opinion may be
requested by the employer.

(Defendant's second response to plaintiff's motion for summary judgment (Doc. No.
24), at Exhibit "A," ¶ 5.)  This policy comports with the FMLA.  *See* 29 C.F.R.
§ 825.301(a)(1).

[4] Dr. Aust issued one other release to defendant before the series of
releases discussed *infra*, which are immediately relevant to this action.  Six
weeks into plaintiff's twelve week recovery period, on June 6, 1997, Dr. Aust
authorized plaintiff to perform "desk work" for defendant.  *(See* Wisener depo.
at 70.)  Mike Stewart, defendant's general manager, notified plaintiff that no
"desk work" position was available at that time, and that he should remain on
medical leave.  *(See id.* at 72.)

5

head of full line vending and plaintiff's immediate supervisor,

told plaintiff that "the company ... had no position that would fit

within these restrictions."[5]  (*Id.* at 79.)

Dr. Aust then wrote a third certificate, on July 9, 1997,

which permitted plaintiff to resume working on July 14, 1997:

> Mr. Wisener is released 7/14/97 to return to his previous
> job, including route duties and to resume his normal
> duties with the exception to the following restrictions.
>
> He has a lifting weight restriction of 25 lbs.  This
> weight restriction may be exceeded but only with the use
> of hand-trucks or a utility cart.   He is to do no
> repetitive lifting, bending, stooping, pushing, pulling
> or climbing such as assembly work.  These are permanent
> restrictions.

(Aust depo. at Plaintiff's Exhibit "3.")  Defendant still did not

permit plaintiff to return to work on July 14th.  (*See* Wisener

depo. at 81-82.)   Plaintiff said that Mike Stewart, defendant's

general manager, told him this release "still had permanent

restrictions and the company did not have any position for

[plaintiff]."  (*Id.* at 82.)

Dr. Aust sent a final letter to defendant on July 28, 1997,

which reiterated the information contained in his letter dated July

9th, with the following addition:

---

[5] **More specifically, plaintiff asserts Juda told him "that the company did
not have a problem with [the] twenty-five pound weight restriction, but with the
repetitive part of it."  (*Id.* at 79.)**

6

❀

> Mr. Wisener has a separate set of restrictions which will
> only be a factor if his job duties are expanded or
> restructured. He may be able to perform these additional
> duties after physician approval is issued.

(Aust depo. at Plaintiff's Exhibit "4.")

The evidentiary submissions in this case associate plaintiff
with four different employment positions: business development
coordinator; market manager/salesman; receptionist; and cashier.[6]
While plaintiff claimed he could perform the position of business
development coordinator with the permanent restrictions prescribed
by Dr. Aust, defendant concluded he could not.  During his
communications with defendant regarding plaintiff's ability to
return to work, Dr. Aust reviewed certain job descriptions
allegedly associated with the business development coordinator
position.[7]

Regarding the market manager/salesman position, plaintiff
testified that he and his supervisor, Richard Juda, discussed the
availability of this position during plaintiff's rehabilitation

---

[6] The parties disagree on whether defendant offered plaintiff a cashier's
position after July 28, 1997.  Plaintiff contends he was never offered a
cashier's position. (See Wisener depo. at 133.)  Defendant claims it did offer
plaintiff a cashier's position, which he refused. (See Johnston affidavit at 1.)
See pages 8 - 9 infra.  Plaintiff does admit, at another point in his deposition,
"that the only position [defendant] had was a cashier's position, which paid $7
an hour, loss of company benefits such as a company vehicle, expense account and
so forth." (Wisener depo. at 86.)

[7] See pages 13-14 infra.

7

from back surgery.[8] Plaintiff contends he could have filled this position. Plaintiff, however, was never <u>offered</u> this position. (*See* Wisener depo. at 131 ("That was their intentions, yes, sir, making me a salesman if we could not get these restrictions lifted.").) Wisener also stated that he "wasn't privy to what positions were available at that time [during plaintiff's rehabilitation, when he and Juda discussed the market manager/salesman position]." (*Id.* at 132.)

At some point after defendant received the fourth letter from Dr. Aust on July 28, 1997, Chris Johnston, Sales Operations Manager for full line vending, offered plaintiff the position of receptionist:

> That was during my conversation with Mr. Johnston over the phone, the last conversation I had with Buffalo Rock in which he offered me the position of that receptionist for $7 an hour in which I told him under the Family Leave Act, the provisions of it, that if I had another occupational prospect that would equal my previous pay that I was ... obligated to take the higher paying position.

(*Id.* at 132-33.)

Finally, Johnston alleges he offered plaintiff a cashier's position, but plaintiff did not accept:

---

[8] More specifically, plaintiff stated that "around the sixth week of my recovery process[, Richard Juda said] that they were looking at if nothing else moving me into a sales position that would not require me to do any lifting, bending, stooping, or climbing at that point." (*Id.* at 130-31.)



8

> I don't recall the date that I called Chris Wisener. I
> was asked to call Chris and give him the pay rate for a
> job that we had offered to him. He was expecting to hear
> from us because he skipped through the chit-chat and
> asked what the pay rate was for the job. When I told him
> the rate he paused for a moment. He then said that any
> further communications that Buffalo Rock needed to have
> with him should be directed through his attorney. He
> then told me it wasn't personal towards me but that he
> had been advised to tell me that.

(Johnston affidavit at 2.)

Plaintiff's failure to accept either the receptionist position

or the cashier position allegedly offered to him by Johnston

resulted in his separation from the company:

> And his [Johnston's] reply to me was — quoting from Mr.
> Stewart — was that if I was not to take this position
> they were offering that we needed to part ways. I then
> asked Mr. Johnston over the phone, am I fired? He said
> they didn't say that. They said we needed to part ways.

(Wisener depo. at 87.) Plaintiff alleges his business development

coordinator position was filled "by an individual who did not have

a record of impairment or who was not perceived to be impaired

after being absent from work for only 10 weeks." (Complaint (Doc.

No. 1) ¶ 11 (emphasis in original).)

## III. DISCUSSION

Plaintiff alleges defendant violated the FMLA and the ADA by

not returning him to the position of business development

coordinator, which he held before his back injury. The court

9

addresses the parties' arguments as to each statute below.

## A.   Plaintiff's FMLA Claim

Plaintiff alleges defendant violated the FMLA in the following
three ways: (1) by requiring plaintiff to obtain multiple releases
from Dr. Aust, and still not permitting him to return to work; (2)
by failing to obtain clarification of plaintiff's condition in the
only manner permitted by the administrative regulations; and (3) by
delaying and ultimately refusing to permit plaintiff to return to
work while attempting to obtain clarification of plaintiff's
condition. (*See* Memorandum of law in support of plaintiff's motion
for summary judgment (Doc. No. 15), at 3.)

Under the FMLA, an employer may require certification from an
employee's physician "that the employee is able to resume work."
29 U.S.C. § 2614(a)(4); *see also* 29 C.F.R. § 825.310(a).  If an
employer needs clarification that an employee is fit to return, the
regulations authorize "a health care provider employed by the
employer [to] contact the employee's health care provider with the
employee's permission, for purposes of clarification of the
employee's fitness to return to work." 29 C.F.R. § 825.310(c)
(emphasis supplied). However, "[t]he employer may not delay the
employee's return to work while contact with the health care

10

provider is being made." *Id.*

Defendant moves for summary judgment by claiming it did not violate the FMLA, since plaintiff could not perform the essential functions of the business development coordinator position upon his return from medical leave. (*See* Brief and evidentiary submission in support of defendant's motion for summary judgment (Doc. No. 21), at 6-8.) The FMLA entitles an employee "to be restored by the employer to the position of employment held by the employee when the leave commenced" or to an equivalent position. 29 U.S.C. § 2614(a)(1)(A)-(B); *see also* 29 C.F.R. § 825.214(a). The regulations state, however, that an employer is not bound to return an employee to the same or an equivalent position if the employee "cannot perform an essential function of the position because of a physical or mental condition." 29 C.F.R. § 825.214(b). The administrative regulations elaborate on the procedure for determining whether an employee can perform the "essential functions" of his position:

> An employee is "unable to perform the functions of the position" where the health care provider finds that the employee is unable to work at all or is unable to perform any one of the essential functions of the employee's position within the meaning of the Americans with Disabilities Act (ADA), 42 USC 12101 *et seq.*, and the regulations at 29 CFR § 1630.2(n). ... An employer has the option, in requiring certification from a health care

11

> provider, to provide a statement of the essential
> functions of the employee's position for the health care
> provider to review.

29 C.F.R. § 825.115. As defined by the ADA regulations, "essential
functions" of a position are the "fundamental job duties," not the
"marginal functions of the position." 29 C.F.R. § 1630.2(n).

Defendant further argues that it did not technically violate
the "return-to-work clarification" provision of the FMLA, because
"[i]t was the plaintiff who struggled to obtain information from
his physician to show that he could perform the duties."
(Defendant's evidentiary submission and brief in opposition to
plaintiff's motion for summary judgment (Doc. No. 17), at 2.)
Defendant distinguishes a request for clarification from a
determination that plaintiff could not perform the essential
functions of his job, based on the certificates of Dr. Aust.

Summary judgment on behalf of either party with respect to
plaintiff's FMLA claim is not warranted, because genuine issues of
material fact exist. The evidence is not clear on the issue of
whether defendant violated the FMLA by not following the proper
procedures in seeking clarification of plaintiff's work-related
limitations. More specifically, a factual issue exists regarding
whether plaintiff continued to return to Dr. Aust on his own

12

⊗

volition, or at the behest of defendant.[9]

Also, there is enough evidence in the record to permit a reasonable jury to find that plaintiff was capable of performing the essential functions of the business development coordinator position upon his return from medical leave.  The key issue of material fact here is whether job descriptions issued by defendant to Dr. Aust accurately summarize the "essential functions" of the business development coordinator and full line vending route driver positions.[10]  Plaintiff contends the descriptions relied on by Dr.

---

[9] Plaintiff stated that he "was told [Aust's explanation in the July 1st letter] was not adequate for [defendant] to release me back into my job." (Wisener depo. at 74.)  Plaintiff claims Richard Juda responded to Dr. Aust's letter of July 1st by stating that the company "needed a more detailed explanation of these restrictions."  (*Id.* at 77.)

[10] Dr. Aust reviewed several job descriptions, which were faxed to his office by defendant's human resources manager, Trish Faulkner.   The jobs described were business development coordinator, full line vending route driver, and cashier.  (*See* Aust depo. at 40, 52-53.)  Dr. Aust stated in his deposition that plaintiff could not perform certain duties associated with the business development coordinator position:

> As you can see from the physical demand factors, ... you can see that that clearly exceeds the general comments that I had made in the previous letters.
>
> . . .
>
> And what I was concerned about is that if I said okay and Mr. Wisener, you know, based on what his account was, that he had not been as forthright as he should about the physical demands and I said okay and he gets hurt on the job, then I bear some of the responsibility for agreeing to something which is in print that makes it a problem.

(Aust depo. at 20-21.)   The duties of a full line vending route driver are subsumed into the business development coordinator position.  Plaintiff stated that, as a business development coordinator, he performed the job of a full line vending route driver approximately two days per week. (*See* Wisener depo. at 12-

13

Aust inaccurately portray the required duties of these positions.
(*See* Wisener depo. at 83, 88-89, 92, 114-16, 117-27, 141-42.)

Although 29 C.F.R. § 825.115 acknowledges that the
determination of whether an employee can perform the "essential
functions" of a position is to be made by the health care provider,
that determination is necessarily predicated on accurate
information regarding the position.  Dr. Aust concluded that
plaintiff could perform the duties of a business development
coordinator based on plaintiff's description, but then changed his
mind upon receipt of defendant's job descriptions.  (*See* Aust depo.
at 21, 56-57.)  A material issue of fact concerns whether
plaintiff's or defendant's description of the job duties is
accurate.  To resolve this question, the fact finder must determine
whether the information contained in defendant's job descriptions
summarizes the "fundamental job duties" of those respective
positions.  *See* 29 C.F.R. § 1630.2(n).

**B.  Plaintiff's ADA Claim**

Plaintiff alleges defendant violated the ADA by discriminating
against him "because of his having a record of an impairment or his
being perceived to be impaired by defendant."  (Complaint ¶ 14.)

13.)

14

Defendant counters that plaintiff is not "disabled," as that term
is defined under the ADA, and moves for summary judgment
accordingly. (*See* Brief and evidentiary submission in support of
defendant's motion for summary judgment, at 4-6.)

.Under the ADA, a disability is defined as "(A) a physical or
mental impairment that substantially limits one or more of the
major life activities of an individual; (B) a record of such an
impairment; or (C) being regarded as having such an impairment."
42 U.S.C. § 12102(2). Regulations promulgated pursuant to the ADA
define "major life activities" as "functions such as caring for
oneself, performing manual tasks, walking, seeing, hearing,
speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(I)
(emphasis supplied). The Eleventh Circuit recently discussed when
a physical impairment substantially limits the major life activity
of working:

> Under the ADA, a physical impairment does not
> substantially limit the major life activity of working
> merely because it precludes the performance of one
> particular job. 29 C.F.R. § 1630.2(j)(3)(i). Instead,
> the impairment must significantly restrict "the ability
> to perform either a class of jobs or a broad range of
> jobs in various classes as compared to the average person
> having comparable training, skills, and abilities." *Id.*

*Standard v. A.B.E.L. Services, Inc.,* 161 F.3d 1318, 1327 (11th Cir.
1998).

15

29 C.F.R. § 1630.2(k) defines "record of such impairment," for
purposes of 42 U.S.C. § 12102(2)(B), as "a history of, or has been
misclassified as having, a mental or physical impairment that
substantially limits one or more major life activities." In
*Hilburn v. Murata Electronics North America, Inc.*, 181 F.3d 1220
(11th Cir. 1999), the Eleventh Circuit noted:

> [T]he record-of-impairment standard is satisfied only if
> [the plaintiff] actually suffered a physical impairment
> that substantially limited one or more of her major life
> activities. "The impairment indicated in the record must
> be an impairment that would substantially limit one or
> more of the individual's major life activities." 29
> C.F.R. pt. 1630, App. § 1630.2(k) (1977) [other citations
> omitted].

*Id.* at 1229. The regulations further specify that "many types of
records" may contain information regarding a substantially limiting
impairment, including medical, educational, and employment
documents. 29 C.F.R. pt. 1630, App. § 1630.2(k).

Under 42 U.S.C. § 12102(2)(C) and its accompanying
regulations, an individual is "regarded as"[11] disabled if he:

> (1) Has a physical or mental impairment that does not
> substantially limit major life activities but is treated
> by a covered entity as constituting such limitation;
>
> (2) Has a physical or mental impairment that
> substantially limits major life activities only as a

---

[11] The court construes plaintiff's claim that he was "perceived as" having
a disability as an argument that defendant "regarded" plaintiff as disabled,
under 42 U.S.C. § 12102(2)(C).

16



result of the attitudes of others toward such impairment; or

(3) Has none of the impairments ... but is treated by a covered entity as having a substantially limiting impairment.

29 C.F.R. § 1630.2(l).

The Supreme Court has articulated two different ways in which an individual may satisfy the definition of being "regarded as" disabled:

(1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities; or

(2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities.

*Sutton v. United Air Lines, Inc.*, ___ U.S. ___, 119 S.Ct. 2139, 2149-2150, ___ L.Ed.2d ___ (1999). The Supreme Court further explained that, in both cases, the entity must:

entertain misperceptions about the individual — it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting. These misperceptions often "resul[t] from stereotypic assumptions not truly indicative of ... individual ability."

*Id.* at 2150 (citations omitted).

Based on the allegations in the complaint, plaintiff seeks to establish his "disability" under either 42 U.S.C. § 12102(2)(B) or

17

§ 12102(2)(C).  For the reasons set forth below, the court finds
plaintiff has failed to meet his burden under 42 U.S.C. §
12102(2)(B), but has satisfied this burden under 42 U.S.C. §
12102(2)(C).

    1.  **42 U.S.C. § 12102(2)(B) — "record of disability"**

The "return to work" certificates issued by Dr. Aust to
defendant constitute "records" for purposes of this section.
However, it cannot be concluded from these records that the
limitations placed on plaintiff substantially limit his major life
activity of working.  Plaintiff must show that his impairment
prevents him from performing either a "class of jobs" or "a broad
range of jobs in various classes":

> The job from which the individual has been disqualified
> because of an impairment, and the number and types of
> jobs utilizing similar training, knowledge, skills or
> abilities, within that geographical area, from which the
> individual is also disqualified because of the impairment
> (class of jobs); and/or
>
> . . .
>
> The job from which the individual has been disqualified
> because of an impairment, and the number and types of
> other jobs not utilizing similar training, knowledge,
> skills or abilities, within that geographical area, from
> which the individual is also disqualified because of the
> impairment (broad range of jobs in various classes).

29 C.F.R. § 1630.2(j)(3)(ii)(B)-(C).  The permanent restrictions
mentioned by Dr. Aust (no lifting more than 25 pounds and no

18

⊕

repetitive pushing, pulling, climbing, bending, lifting, or
stooping), while allegedly preventing plaintiff from performing the
duties of a business development coordinator,[12] do not indicate that
plaintiff is restricted in his "ability to perform either a class
of jobs or a broad range of jobs in various classes as compared to
the average person having comparable training, skills, and
abilities." 29 C.F.R. § 1630.2(j)(3)(i). Failure to put on
evidence in this regard merits a finding of no disability under the
"record" prong of the ADA. *See Swain v. Hillsborough County School
Board*, 146 F.3d 855, 858 (11th Cir. 1998) ("Although a plaintiff
seeking recovery under the ADA is not required to provide a
comprehensive list of jobs which she cannot perform, the person
must provide some evidence beyond the mere existence and impact of
a physical impairment to survive summary judgment.") Therefore,
summary judgment in favor of defendant is proper as to plaintiff's
claim of having a "record" of disability.

### 2. 42 U.S.C. § 12102(2)(C) — "regarded as" having a disability

Plaintiff also argues that defendant regarded his back injury
as if it substantially limited plaintiff in his major life activity
of working. In addition to showing that defendant concluded that

---

[12] *See supra* note 10.

19

plaintiff was not able to perform the duties of a business development coordinator, plaintiff must show that defendant also believed he could not perform either a "class of jobs" or "a broad range of jobs in various classes." *See Witter v. Delta Air Lines*, 138 F.3d 1366, 1370 (11th Cir. 1998). Plaintiff's strongest argument here is that the only job defendant actually offered him following his back injury and subsequent to surgery was that of receptionist, a lower-paying job with reduced benefits that does not require the same knowledge, training, skills, or abilities, compared to what is required for the business development coordinator position. The inference to be drawn from this point is that defendant regarded plaintiff as unable to perform a "class of jobs," as defined by the administrative regulations.

The Eleventh Circuit has said, however, that "[w]here a 'defendant's recognition of plaintiff's limitations was not an erroneous perception, but instead was a recognition of a fact, ... a finding that plaintiff was regarded as disabled and, therefore, entitled to the protections of the ADA is inappropriate.'" *Hilburn v. Murata Electronics North America, Inc.*, 181 F.3d 1220, 1230 (11th Cir. 1999) (quoting *McCollough v. Atlanta Beverage Co.*, 929 F. Supp. 1489, 1498 (N.D. Ga. 1996); *Bute v. Schuller International*

20

*Inc.*, 998 F. Supp. 1473, 1477 (N.D. Ga. 1998)). Still, the
"recognition of plaintiff's limitations" in this case, that the
permanent restrictions imposed by Dr. Aust allegedly prevented him
from performing the business development coordinator position, does
not answer whether defendant regarded plaintiff as substantially
limited in his ability to perform a "class of jobs" or "broad range
of jobs." The issue, therefore, becomes whether defendant
"negatively stereotype[d] that employee's abilities to the latter's
detriment." *McCollough*, 929 F. Supp. at 1498.

Although no evidentiary submission clarifies the issue, it
seems clear that the offered (and allegedly offered) positions of
receptionist and cashier do not fall within the same "class of
jobs" as business development coordinator. The basic functions of
the business development coordinator postion include
"[s]trengthening customer relations, supporting and enforcing
company policies, monitoring product distribution, and monitoring
product rotation."[13] (Aust depo. at Plaintiff's Exhibit "5.")
Although summaries of the functions and responsibilities of a
receptionist or cashier were not submitted to the court, this court

---

[13] Along with these basic functions, a business development coordinator for
defendant has a number of "duties and responsibilities," including the
achievement of all marketing and merchandising standards, the achievement of all
product distribution and rotation standards, route responsibilities, and
warehouse responsibilities. (*See* Aust depo. at Plaintiff's Exhibit "5.")

21

concludes that these positions cannot be grouped in the same "class of jobs" as that of business development coordinator, because they do not utilize "similar training, knowledge, skills, or abilities." 29 C.F.R. § 1630.2(j)(3)(ii)(B); *see also Witter v. Delta Air Lines, Inc.*, 138 F.3d 1366, 1370 (11th Cir. 1998) (certain non-piloting jobs, such as pilot ground trainer, flight simulator trainer, flight instructor, aeronautical school instructor, along with executive, management, and administrative positions in flight operations, are in same "class of jobs" as pilot). Disparity in pay and benefits contributes to this rationale. (*See* Wisener depo. at 86.) Therefore, defendant's argument that it did not regard plaintiff as "disabled," because it offered him a receptionist or cashier position, is unavailing.

The position of market manager/salesman was never in fact offered to plaintiff. Again, no evidentiary submission details the basic functions and responsibilities of this position. Therefore, this court cannot conclude that this position would fall within the same "class of jobs" as business development coordinator. The fact that the position was allegedly available, but never explicitly offered to plaintiff, pulls against defendant's motion for summary judgment. In sum, this court cannot conclude, as a matter of law,

22

that defendant viewed plaintiff as being able to perform a "class of jobs" utilizing similar training, knowledge, skills, given what is required in the business development coordinator position. Therefore, summary judgment is inappropriate as to plaintiff's claim that he is disabled under 42 U.S.C. § 12102(2)(C).

## IV. CONCLUSION

For the foregoing reasons, the cross motions for summary judgment as to plaintiff's claim under the FMLA are due to be denied, and defendant's motion for summary judgment as to plaintiff's claim under the ADA is due to be granted in part and denied in part. An order consistent with this memorandum opinion shall be entered contemporaneously herewith.

DONE this the 27th day of October, 1999.

_____

United States District Judge

23